IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID SCOTT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JOHN F. KERRY, ET AL. | : | No.  15-5983 |

## MEMORANDUM

**Padova, J.**                                                                                               September 28, 2016

Plaintiff David Scott brought this action against Secretary of State John F. Kerry,[1] the United States Department of State Bureau of Diplomatic Security, Global Anti-Terrorism Assistance Office ("GATA"), and Michael Casteneda, asserting claims arising out of Plaintiff's employment as an instructor for a GATA training course titled "Preventing Terrorist Attacks on Bus and Rail Systems" ("PTABRS").  Secretary Kerry and GATA (the "Moving Defendants") seek an order dismissing Count I of Plaintiff's Amended Complaint, which asserts a claim against them pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* (the "APA").  For the following reasons, we grant the Motion.

**I.     BACKGROUND**

The Amended Complaint alleges the following facts.  Plaintiff David Scott is an African-American citizen and resident of Pennsylvania.  (Am. Compl. ¶ 4.)  He was a transit police officer for 31 years and retired as the Deputy Chief of Police for SEPTA, a job he had held for more than 18 years.  (Id. ¶ 5.)

The State Department maintains GATA as a means of implementing the Anti-Terrorist Act, 18 U.S.C. § 2331 *et seq.* ("ATA").  (Id. ¶ 9.)  GATA operates the PTABRS training course, which is taught overseas in host countries by United States transportation police specialists.  (Id.

---

[1]Secretary Kerry is only sued in his official capacity.  (Am. Compl. ¶ 6.)

¶ 11.) GATA retains an outside contractor, DECO, Inc., to retain and assign instructors for the PTABRS training course. (Id. ¶ 12.) DECO enters into professional services contracts ("consulting agreements") with instructors. (Id.) Instructors may not be given overseas assignments by DECO unless they are on a GATA-approved list of vetted instructors. (Id. ¶ 13.) The PTABRS team consists of six instructors, most of whom are active or retired transit police commanders. (Id. ¶ 16.) Most of the time, the PTABRS course is taught by teams of three instructors, consisting of a Team Leader and two other instructors. (Id. ¶ 17.) The State Department also sends out teams of instructors specializing in other subjects, such as Cyber Security and Cyber Terrorism, to host countries, often at the same time as the PTABRS teams. (Id. ¶ 18.)

In 2013, Plaintiff was a GATA-approved and vetted member of the six-member PTABRS team. (Id. ¶ 22.) He was the only African-American member of the PTABRS team. (Id. ¶ 23.) During 2013, Plaintiff served on PTABRS team assignments in Indonesia, Brazil, and Panama, each time pursuant to a separate consulting agreement with DECO. (Id. ¶ 25.) During these assignments, Defendant Michael Casteneda was a Curriculum Project Manager for the State Department's ATA curriculum team. (Id. ¶¶ 26, 37.) Casteneda's responsibilities included revising and improving the curriculum for State Department anti-terrorism courses, including PTABRS, and observing how the instructors taught those classes. (Id. ¶ 27.)

While Plaintiff was performing the Brazil assignment, a Caucasian male member of the State Department's Cyber Security team known as "Michael" made racially insensitive remarks to Plaintiff and threw food at Plaintiff. (Id. ¶ 42.) Plaintiff asked Michael to stop his behavior. (Id. ¶ 43.) The lead instructor for the PTABRS course, Mark Olsen, and another PTABRS instructor, Kevin Gaddis, witnessed Michael's behavior and acknowledged to Plaintiff that

Michael's behavior was inappropriate. (Id. ¶¶ 34, 44.) Amy Hall, who worked with Casteneda as part of the State Department's ATA curriculum team, also witnessed Michael's behavior. (Id. ¶¶ 37, 45.) When Plaintiff spoke to Casteneda about the incident, Casteneda became agitated. (Id. ¶¶ 46-47.)

DECO utilized a computerized process run by CatchPath, a third party vendor, to staff overseas PTABRS courses. (Id. ¶ 14.) Starting in 2014, Plaintiff used CatchPath's website to apply for PTABRS team overseas assignments. (Id. ¶ 49.) Plaintiff did not receive any responses to his applications. (Id. ¶ 50.) On June 14 and 17, 2014, Plaintiff sent emails to Andy Veal of DECO, asking why he had not received any responses to his applications. (Id. ¶ 51.) On June 17, 2014, Veal responded, writing "'You are not showing up on the ATA instructor availability list. I checked with the new TDO[2] and he has confirmed that you are no longer vetted. Feel free to give me a call, but I was provided no other information.'" (Id. ¶ 52.) This was the first notice Plaintiff received that he had been removed from the list of GATA-approved and vetted instructors. (Id. ¶ 53.) Plaintiff called Veal, who told Plaintiff that the new TDO, David Cassidy, had informed Veal that he had received orders from GATA that Plaintiff was not to be used. (Id. ¶ 54.) Veal was not given a reason. (Id.)

During Plaintiff's pre-suit investigation, his attorney received a letter dated March 3, 2015, from DECO's attorney stating that "Plaintiff is not eligible for assignment by DECO because he is 'no longer on the state department's "vetted list,"' which list, according to the letter, 'is prepared and distributed to GATA prime contractors by the state department.'" (Id. ¶ 62; Ex. B.) No one from the State Department ever notified Plaintiff that he had been removed from the list of GATA-approved and vetted instructors or why he had been removed from that

---

[2] The TDO is DECO's Training Delivery Officer. (Am. Compl. ¶ 38.)

list.  (Id. ¶¶ 63-64.)  Plaintiff believes that Casteneda asked GATA officials to remove Plaintiff from the list of vetted instructors in retaliation for the informal complaint Plaintiff made to Casteneda and Olsen about the racially insensitive behavior of Cyber Security team member Michael, and that GATA officials granted that request.  (Id. ¶¶ 65-66.)

As a result of the State Department's actions, Plaintiff was not selected to work on any of the 19 contract opportunities on which he bid through the CatchPath web site in 2014 and 2015.  (Id. ¶ 78.)  Plaintiff lost approximately $26,000 in income from lost PTABRS assignments.  (Id. ¶ 79.)  Moreover, GATA's removal of Plaintiff from its list of vetted instructors was intended to permanently exclude Plaintiff from future government work on GATA's contracts with DECO, making Plaintiff permanently ineligible for future work for the State Department.  (Id. ¶ 80.)  In addition, Plaintiff's removal from GATA's list of vetted PTABRS instructors will likely result in his permanent exclusion from any future work for the State Department as a contractor or subcontractor.  (Id. ¶ 82.)

Plaintiff believes that he has also lost other consulting opportunities as a result of his removal from the list of GATA-approved and vetted PTABRS instructors.  Specifically, he believes that he has lost the opportunities to:  (1) teach courses in Pakistan for International Preparedness Associates, Inc. (id. ¶¶ 83-84); (2) rewrite and teach a PTABRS course in Pakistan in 2014 or 2015, for which he had been approved in February 2013 (id. ¶¶ 86-88); (3) consult for the National Organization of Black Law Enforcement Executives, for which he had previously worked (id. ¶90); and (4) work as a security consultant with the Baltimore Mass Transit Authority (id. ¶ 91).  Plaintiff also believes that his ability to gain employment as an adjunct professor or as an administrator with a security firm or a police department will be greatly diminished because GATA removed him from its list of vetted instructors.  (Id. ¶¶ 92-93.)

Plaintiff made Freedom of Information Act requests for documents related to his removal from the list of vetted instructors on November 11, 2014. (Id. ¶ 94; Ex. C.) The State Department acknowledged receipt of his request on November 17, 2014. (Id. ¶ 95, Ex. D.) Plaintiff has received no further communication from the State Department regarding this request. (Id. ¶ 96.)

Count I of the Amended Complaint asserts a claim against Secretary Kerry and GATA pursuant to the APA, which provides that someone who is "suffering legal wrong because of agency action" may file a suit "seeking relief other than money damages" in federal court. 5 U.S.C. § 702. Specifically, Count I alleges that Plaintiff is entitled to relief because, even though Plaintiff was a contractor for DECO, when the Moving Defendants removed him from the list of DECO-approved and vetted instructors, they failed to apply the debarment notification and hearing procedures set forth in the Federal Acquisition Regulations, 48 C.F.R. § 9.400 *et seq.*, and the corresponding Department of State Acquisition Regulations ("DOSAR"), 48 C.F.R. § 609.403 *et seq*. (Id. ¶¶ 105-07.) These actions also constitute final agency actions that are contrary to Plaintiff's Fifth Amendment procedural due process rights. (Id. ¶¶ 108-11.) Plaintiff seeks an injunction requiring the Moving Defendants to comply with DOSAR before debarring any contractor or subcontractor in the future; requiring the Moving Defendants to return him to the list of GATA-approved and vetted PTABRS instructors; requiring the Moving Defendants to pay him the money he lost because of their actions; requiring the Moving Defendants to take all steps necessary to restore Plaintiff's reputation, including a public apology; and requiring the Moving Defendants to pay Plaintiff's attorney's fees and costs.

## II.     LEGAL STANDARD

The Moving Defendants ask us to dismiss Count I of the Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1) "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction."  Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court."  Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).  "Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint."  Id. (citing Mortensen, 549 F.2d at 889–92).  "A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case—and here the District Court may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction."  Id.  "In sum, a facial attack 'contests the sufficiency of the pleadings,' 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'"  Id. (alterations in original) (quoting In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012); and CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)).

"In reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'"  Id. (quoting In re Schering Plough Corp., 678 F.3d at 243).  "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a

6

motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." Id. (citing In re Schering Plough Corp., 678 F.3d at 243). "This is in marked contrast to the standard of review applicable to a factual attack, in which a court may weigh and 'consider evidence outside the pleadings.'" Id. (quoting Gould Elecs. Inc., 220 F.3d at 176).

We consider the instant Motion as a facial attack on our subject matter jurisdiction because a motion to dismiss for lack of subject matter jurisdiction filed before the defendant has filed an "answer to the complaint or otherwise presented competing facts" is "by definition a facial attack." See id. at 358-59 (citing Mortensen, 549 F.2d at 892 n.17). While the Moving Defendants have filed an Answer to the Amended Complaint, their Answer pertains only to Counts IV and V of the Amended Complaint, which assert claims against Secretary Kerry pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. The Moving Defendants have not answered or denied, or presented competing facts in response to, the factual allegations contained in Paragraphs 9-93 and 98-111 of the Amended Complaint, which pertain to Plaintiff's claim in Count I. (See Fed. Defs.' Answer to Pl.'s Amended Compl.)

**III.  DISCUSSION**

The Moving Defendants argue that this Court lacks subject matter jurisdiction over Count I because the Tucker Act and the Contract Disputes Act ("CDA") provide that the Court of Federal Claims has exclusive jurisdiction over this claim, since it is based on a contract with the United States.

The CDA "applies to any express or implied contract . . . made by an executive agency for -- (1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair or maintenance of real property;

or (4) the disposal of personal property." 41 U.S.C. § 7102(a). The CDA provides that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103. The contractor may appeal that decision either to an agency board of contract appeals or to the United States Court of Federal Claims. 41 U.S.C. § 7104; see also Eagle Fence Co., Inc. v. V.S. Elec., Inc., 324 F. Supp. 2d 621, 626 (E.D. Pa. 2004) ("'[T]he CDA vests exclusive jurisdiction with either the Agency Board of Contract Appeals or the United States Court of Federal Claims over claims regarding procurement contracts entered into by an executive agency . . . .'" (quoting Spodek v. United States, 26 F. Supp. 2d 750, 754 (E.D. Pa. 1998))). The Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States. . . ." 28 U.S.C. § 1491(a)(1); see also 4900 S. Broad St. Assoc.-Tenant, L.P. v. United States Dep't of Agriculture, Civ. A. No. 08-4646, 2009 WL 301936, at *3 (E.D. Pa. Feb. 4, 2009) (discussing the Tucker Act and the CDA).

The Moving Defendants argue that we lack subject matter jurisdiction over Plaintiff's claim in Count I because his claim depends upon GATA's contract with DECO (the "GATA Contract"), and federal law requires that most contract claims against the federal government be brought in the Court of Federal Claims.[3] The GATA Contract provides that DECO "shall provide qualified instructors, subject matter experts, domestic training facilities, logistics support

---

[3] The Little Tucker Act gives district courts concurrent jurisdiction with the Court of Federal Claims for contract claims seeking damages of $10,000 or less, except for claims that are brought pursuant to §§ 8(g)(1) and 10(a)(1) of the CDA. 4900 S. Brouad St. Assoc.-Tenant, 2009 WL 301936, at *1 and n.2 (citing 28 U.S.C. § 1346(a)(2).

and services to support ATA assistance to foreign partners."[4] (Defs.' Mem., Ex. A ¶ C.1.2.) The GATA Contract further specifies the standards to be used by DECO for hiring such instructors, the work to be performed by the instructors, the standards for the instructors' appearance and conduct, and the vetting that GATA will perform with respect to the instructors. (Id. ¶¶ C.3.7, C.5, C.5.2, C.5.3, C.5.5, C.5.6.) The GATA Contract is clearly a contract with an executive agency of the United States that concerns the procurement of services and, accordingly, an action brought regarding that contract must be brought pursuant to the CDA and the Tucker Act.

Plaintiff's consulting agreements with DECO provide that he was retained to provide services under the GATA Contract.[5] (Pl.'s Mem., Ex. A at 1.) In fact, the Amended Complaint specifically alleges that Count I arises from Moving Defendants' failure to treat Plaintiff as a "'subcontractor under a Government contract'" when he was removed from the list of GATA-approved and vetted PTABRS instructors. (Am. Compl. ¶ 105.) In addition, Plaintiff states in his Memorandum of Law that he was a government subcontractor because he had a contract with DECO. (Pl.'s Mem. at 11.) In light of the allegations of the Amended Complaint, Plaintiff's contract with DECO, and the GATA Contract, we understand Plaintiff's claims in Count I to be based on an assertion that he was a government subcontractor of GATA and we therefore conclude that his claims against the Moving Defendants in Count I relate to the GATA contract.

---

[4]Paragraphs 108 and 109 of the Amended Complaint specifically refer to the contract between GATA and DECO. Consequently, we may consider that contract without treating the instant Motion as a factual attack on our subject matter jurisdiction. Constitution Party, 757 F.3d at 358.

[5]Just as we may consider the GATA Contract, we may consider Plaintiff's consulting agreement with DECO in connection with the instant Motion to Dismiss because it is specifically referenced in paragraphs 20, 21, and 109-110 of the Amended Complaint. See Constitution Party, 757 F.3d at 358.

Plaintiff argues that the CDA does not apply to divest this Court of subject matter jurisdiction over Count I because he "was a government subcontractor, not a contractor, and was not in contractual privity with the State Department."[6] (Id.) Plaintiff relies on Eastern, Inc. v. Shelly's of Delaware, Inc., 721 F. Supp. 650 (D.N.J. 1989) for the proposition that "the provisions of the CDA do not apply to subcontractors." Id. at 651 (citing S. Rep. No. 1118, 95th Cong., 2d Sess. 16-17, reprinted in 1978 U.S. Code Cong. & Admin. News 5235, 5250-51). However, after examining the legislative history of the CDA, the Eastern court determined that the CDA does, in fact, apply to claims brought by subcontractors. Id. at 651-52. The Eastern Court explained that the purpose of the CDA was to "cure the ills associated with the prior system of government contract dispute resolution," which was "'too expensive and time consuming for the efficient and cost-effective resolution of small claims'" because such claims "could be brought in a number of fora including the district courts." Id. at 651 (quoting and citing S. Rep. No. 1118, 95th Cong., 2d Sess. 4, reprinted in, 1978 U.S. Code Cong. & Admin. News 5235, 5238.) The system created by the CDA, "in which all contract claims must be brought in either the Board of Contract Appeals or the Claims Court was adopted because it was thought to be more efficient in terms of time and money."[7] Id. (citation omitted). "Allowing subcontractors to bring actions against [an executive agency] would contravene these objectives." Id. Thus, while the provisions of the CDA do not specifically apply to subcontractors, "Congress could not have expected subcontractors to have access to district

---

[6] Plaintiff does not address the Moving Defendants' argument that the Tucker Act also vests subject matter jurisdiction over the claims asserted in Count I solely in the Court of Federal Claims.

[7] In 1992, the name of that court was changed from the Claims Court to the Court of Federal Claims. See http://www.uscfc.uscourts.gov/sites/default/files/court_info/Court_History_Brochure.pdf (last visited Sept. 21, 2016).

10

courts after it closed the doors of district courts to contractors." Id. (citation omitted). Allowing subcontractors to sue the federal government in federal district courts would subvert the intent of the CDA by making "an executive agency that has entered into a contract with a general contractor . . . potentially . . . subject to suit by dozens of subcontractors in district court, which, as the CDA indicates, Congress views as an inefficient forum for resolution of contract-based problems." Id. We agree with the reasoning of Eastern and conclude that, because Plaintiff was a subcontractor on the GATA Contract, and his claims rely on that contract, the CDA and Tucker Act apply to the claims raised in Count I of the Amended Complaint.

Plaintiff also argues that we should deny the instant Motion because he was not a direct contractor of GATA, and thus this lawsuit is the only avenue by which he can seek redress for his removal from the list of GATA-approved and vetted PTABRS instructors. However, as the Eastern Court described, Congress has created sponsorship as a vehicle "through which sub-contractors can pursue their remedies." Id. at 652. "Prime contractors are permitted to sponsor claims brought by subcontractors against the government." Winter v. FloorPro, Inc., 570 F.3d 1367, 1372 (Fed. Cir. 2009) (citing 48 C.F.R. § 44.203(c)). "Sponsorship allows the subcontractor to proceed against the government 'through, and with the consent and cooperation of, the prime, and in the prime's name.'" Id. (quoting Erickson Air Crane Co. of Wash., Inc. v. United States, 731 F.2d 810, 814 (Fed. Cir. 1984)). When Congress excluded subcontractors "from the provisions of the CDA, Congress expected subcontractors to bring actions against the executive agencies via the sponsorship practice." Eastern, 721 F. Supp. at 652 (citing S. Rep. No. 1118, 95th Cong., 2d Sess. 16, reprinted in 1978 U.S. Code Cong. & Admin. News 5235, 5250). The legislative history of the CDA shows that Congress retained sponsorship for the following reasons:

> "There are a number of advantages in the present sponsorship approach. From the Government's point of view, the sponsorship approach is the best method of administering complex procurements. By administering its procurements through a single point of contact, the Government's job is made both simpler and cheaper. The single point of contact approach also helps suppress frivolous claims. . . . Finally, by denying the subcontractors direct access to administrative remedies, the Government is forcing the prime contractor and the subcontractor to negotiate the disputes . . . ."

Id. (alteration in original) (quoting S. Rep. No. 1118, 95th Cong., 2d Sess. 16–17, reprinted in 1978 U.S. Code Cong. & Admin. News 5235, 5250–51). As the Eastern Court concluded, "[a]llowing subcontractors to proceed directly to district court would clearly produce the same problems Congress sought to foreclose. It is more than reasonable, therefore, to conclude that Congress could not have intended to allow subcontractors to take this route." Id.

We agree with the reasoning of Eastern as to this issue and conclude that the CDA applies to the claims raised in Count I of the Amended Complaint even though Plaintiff may not bring those claims against the Moving Defendants without utilizing the sponsorship approach. We conclude, accordingly, that this Court lacks subject matter jurisdiction over these claims.[8] See Eastern, 721 F. Supp. at 651-52. See also Fortna, Inc. v. United States Postal Serv., Civ. A. No. 00-3081, 2000 WL 33119416, at *1 (E.D. Pa. Dec. 29, 2000) ("The CDA's preemption of district court jurisdiction extends to actions brought against the [executive agency] by subcontractors such as plaintiff." (citations omitted)); Eagle Fence, 324 F. Supp. 2d at 627 ("Considering the availability of other avenues of relief and the purpose of the CDA, including the unlikelihood that Congress intended to create a comprehensive system for streamlining the resolution of claims by contractors while at the same time allowing subcontractors to continue to

---

[8] Since we grant the Moving Defendants' Motion to Dismiss Count on this basis, we need not address their other arguments in support of the Motion.

bring claims in federal district court, I likewise conclude that Congress also intended the CDA to preclude district courts from asserting jurisdiction over claims brought by subcontractors.").

## IV. CONCLUSION

For the reasons stated above, we conclude that we lack subject matter jurisdiction over the claims asserted by Plaintiff in Count I of the Amended Complaint. We therefore grant the Moving Defendants' Motion to Dismiss and dismiss Count I of the Amended Complaint. An appropriate order follows.[9]

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.

---

[9] Plaintiff asks that we allow him to amend his Amended Complaint to cure any deficiencies in this claim. Federal Rule of Civil Procedure 15 provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Reasons for denying a party's request for leave to amend its pleading include prejudice to the nonmoving party, undue delay, bad faith or dilatory motive, and futility. De Lage Landen Operational Servs., LLC v. Third Pillar Sys., Inc., Civ. A. No. 09-2439, 2010 WL 3431105, at *1 (E.D. Pa. Aug. 27, 2010) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). The United States Court of Appeals for the Third Circuit has held that "where the absence of subject matter jurisdiction is apparent from the face of a complaint, any amendment would be futile, and hence dismissal without leave to amend is proper." Roberts v. Mayor & Burgesses of London Borough of Brent, 70 F. App'x 615, 619 (3d Cir. 2003) (citing Miklavic v. USAir, 21 F.3d 551, 557–58 (3d Cir. 1994)). Since we lack subject matter jurisdiction over Count I, we conclude that amendment of that claim would be futile and we deny Plaintiff's request to file a second amended complaint.